UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

CLINT DAVENPORT,

                      Plaintiff,                    **REPORT & RECOMMENDATION**

     v.                                                   22-cv-4030 (NJC) (ST)

COUNTY OF SUFFOLK,

                      Defendant.
------------------------------------------------------------X
**TISCIONE, United States Magistrate Judge:**

Clint Davenport ("Plaintiff"), appearing *pro se*, sued the County of Suffolk ("Defendant" or "the County") under 42 U.S.C. § 1983 for alleged violations of his constitutional rights—including his right to due process, equal protection, and speedy trial—as well as malicious prosecution and false arrest. Before this Court is Defendant's motion for judgment on the pleadings ("the Motion"). For the reasons explained below, this Court respectfully recommends that the District Court GRANT the Motion.

## BACKGROUND

### I. FACTUAL ALLEGATIONS

#### A. The Alleged Traffic Infraction Prosecution

Plaintiff, a Suffolk County resident, alleges that on March 8, 2019, he was called to the Third Precinct of the Suffolk County Police Department where, upon arrival, he was arrested for "leaving the scene of an accident with property damage" in violation of New York Vehicle & Traffic Law. Am. Compl. ¶¶ 1, 7 ECF No. 27. After making a statement to the police, Plaintiff was allegedly given a "summons" and released. *Id.* ¶ 7. Plaintiff claims that although the summons was "returnable" on May 8, 2019, he was permitted to plead not guilty and waive his arraignment by mail, which he did. *Id.* ¶ 8. However, his mailing was allegedly "ignored," and when he failed

to appear, the court found him in default.[1]  *Id.*  Thereafter, Plaintiff's arraignment was rescheduled for June 19, 2019.  *Id.*

On June 19, 2019, Plaintiff was arraigned and charged with a traffic infraction under New York Vehicle & Traffic Law § 600.1.a.  *Id.* ¶ 9.  Although Plaintiff was served with the charging instrument at the arraignment, he asserts that he was not given a copy of the supporting deposition upon which the charge was based—claiming that the prosecutor "intentionally withheld" it from him.  *Id.*

Thereafter, the case was adjourned to July 24, 2019.[2]  *Id.*  Plaintiff alleges that when he expressed readiness for trial, the court instructed the prosecutor to inquire as to witness availability.  *Id.* ¶ 10.  According to Plaintiff, he was "once again" not provided with the supporting deposition.  *Id.*  On August 14, 2019, the prosecutor allegedly admitted to not having inquired as to witness availability and, "once again," did not provide Plaintiff the supporting deposition.  *Id.* ¶ 11.

On September 18, 2019, Plaintiff moved to dismiss the case based on not having obtained the supporting deposition.  *Id.* ¶ 12.  The court permitted the prosecution to oppose the motion by October 11, 2019, but the prosecutor allegedly failed to do so.  *Id.* ¶ 13.  At the following court appearance, the prosecutor allegedly "claimed to be completely unaware of [Plaintiff's] motion."  *Id.*  The court thus gave the prosecutor additional time to respond.  *Id.*  Sometime thereafter, the prosecutor submitted his opposition to Plaintiff's motion to dismiss, the papers for which included the supporting deposition.  *Id.* ¶ 14.  As such, the court denied Plaintiff's motion.  *Id.*

On January 24, 2020, Plaintiff served a discovery demand requesting "disclosure of the damages [Plaintiff] was alleged to have caused."  *Id.* ¶ 15.  The prosecution was "given until"

---

[1] The Amended Complaint fails to specify the court in which Plaintiff was prosecuted, or the name(s) of the individual prosecutor(s) and officer(s) involved in the arrest and prosecution.  To avoid confusion, this Court will refer to the court overseeing Plaintiff's alleged traffic case as "the court" with a lowercase "c."
[2] On that day, the court granted Plaintiff permission to defend himself *pro se*.  Am. Compl. ¶ 10.

2

January 31, 2020 to respond to the demand, and the case was adjourned to February 11, 2020. *Id.* Although the prosecution had responded to the demand on February 11, 2020, the court further ordered the prosecution to "provide sufficient discovery" by February 19, 2020. *Id.* ¶ 16.

According to Plaintiff, while the prosecution responded to Plaintiff's discovery request, the prosecution otherwise failed to provide any actual discovery by the February 19, 2020 deadline. *Id.* ¶ 17. The prosecution "requested more time," and the court gave them until April 3, 2020. *Id.* On April 3, 2020, Plaintiff appeared at the courthouse, finding it closed, and obtained a July 22, 2020 adjournment date. *Id.* ¶ 18. On July 22, 2020, Plaintiff appeared, again finding the courthouse closed, and obtained a September 10, 2020 adjournment date. *Id.* ¶ 19.

On September 10, 2020, the prosecution allegedly failed to provide, without explanation, any of the outstanding discovery items. *Id.* ¶ 20. The prosecution was "given more time to respond, and the case was put over to October 1, 2020." *Id.* On that day, Plaintiff was allegedly told that no supplemental discovery would be provided, as the prosecution did not have the sought-after discovery items. *Id.* ¶ 21. Plaintiff expressed his intention to again move for dismissal. *Id.*

According to Plaintiff, the case was then transferred to "another court," and his motion to dismiss was submitted to the "new" court. *Id.* ¶ 22. The court adjourned the case to January 5, 2021. *Id.* On that day, Plaintiff appeared at the courthouse, finding it closed, and obtained a February 16, 2021 adjournment date. *Id.* ¶ 23. Plaintiff then again appeared at the courthouse, again finding it closed, and obtained a March 5, 2021 adjournment date. *Id.* ¶ 24. On March 5, 2021, the prosecutor allegedly claimed to be unaware of Plaintiff's pending motion, and the court granted the prosecutor until March 25, 2021 to oppose it. *Id.* ¶ 25. The prosecutor also allegedly claimed to have several discovery items, which Plaintiff requested be mailed to him. *Id.* ¶ 26. The prosecutor agreed to do so, but no such items were ever received. *Id.*

3

On March 25, 2021, Plaintiff's motion was "once again, submitted to the court." *Id.* ¶ 27. The prosecutor did not oppose the motion. *Id.* On May 5, 2021, the court allegedly held that the prosecution's "one" discovery response was sufficient. *Id.* On June 11, 2021, the court instructed the prosecution to serve and file a certificate of compliance. *Id.* ¶ 29. However, on August 26, 2021, the court allegedly "expressed a belief that recusal from [Plaintiff's] case was appropriate," and the case was subsequently reassigned and adjourned to November 12, 2021. *Id.* ¶ 30.

On November 12, 2021, Plaintiff, appearing before the "third" court, explained the case's facts and circumstances, emphasizing that it had been ongoing for three years, among other things. *Id.* ¶¶ 31, 32. The court allegedly suggested that the prosecutor consider "a consent dismissal" if they could not "certify" by the next court date of December 2, 2021. *Id.* ¶ 32. Plaintiff alleges that on December 2, 2021, the prosecution "finally conceded" that they could establish neither that Plaintiff had committed the infraction, nor that damages had been sustained as a result. *Id.* ¶ 33. The prosecutor allegedly "acknowledged that the people were in violation of the [P]laintiff's right to a speedy trial, and consented to dismissal." *Id.* According to Plaintiff, "[a]fter nearly three years and 20 court appearances," the court dismissed the charge. *Id.*

### B. Other Alleged Instances of the County's Misconduct

Plaintiff claims that the traffic infraction prosecution was "just the latest incident in a long history" of the County's "misconduct" towards him. *Id.* ¶ 36. However, Plaintiff does not say when several of these incidents occurred, or the names of the County employees involved in them. For example, Plaintiff alleges that, in one instance, the County summarily dismissed criminal charges that Plaintiff had pursued against "an irate landlord" for pushing Plaintiff and knocking over his barbeque. *See id.* ¶¶ 37–38.

Plaintiff alleges that, in another instance, he "was met with strong resistance, from the

4

police" when he filed a criminal complaint after receiving a "bad" check as payment for "a job [he] did on a house in Wyandanch." *Id.* ¶¶ 39, 40. Despite Plaintiff's "diligence" in pursuing the criminal complaint, the investigating officer "closed" the matter just one week later, claiming that the "complaining witness"—*i.e.* Plaintiff—was not being cooperative. *Id.* ¶ 41.

In yet another instance, Plaintiff claims to have driven over to the same Wyandanch house one night in preparation to file a mechanics lien on the property. *Id.* ¶ 42. While driving in Wyandanch, Plaintiff claims that the police stopped him, despite that he "was careful not to give the police any reason to stop [his] car." *Id.* ¶¶ 43, 44. According to Plaintiff, "just being a white man driving in Wyandanch after dark, was reason enough." *Id.* ¶ 43. Plaintiff questioned why he was stopped and was eventually "pulled" from his car, "interrogated further," and "searched and hand-cuffed." *Id.* ¶ 44. When processed at the precinct, Plaintiff was allegedly informed that he was "being arrested for driving under the influence of drugs, a . . . charge made only after [his] identity became known to the police." *Id.*

Plaintiff allegedly tape recorded the entire encounter, as he "had long since started carrying a tape recorder" because he "was so often harassed by the police." *Id.* ¶ 43. However, after being arraigned and spending 24 hours in custody, Plaintiff returned to his car to find that the police had allegedly "erased the incriminating audio" on his tape recorder "by simply recording over it." *Id.* ¶ 45.

In another instance, Plaintiff alleges that two "local" policemen came to his apartment in June 2023 while looking for his neighbor. *Id.* ¶ 47. Plaintiff knew nothing of the neighbor, "cut the conversation short, and closed [his] door." *Id.* Plaintiff then allegedly watched the officers examine his car and take notice "of a small crack in his windshield," which they, according to Plaintiff, used as a pretext to write him a summons. *Id.* ¶ 48. Plaintiff mailed the summons to the

5

court and awaited a trial date, but never received a response. *Id.* ¶ 49. According to Plaintiff, the police officer never "processed" the summons, and only issued it as "a vindictive abuse of power." *Id.*

## II.     PROCEDURAL HISTORY

Plaintiff originally sued the County on July 11, 2022. *See generally* Compl., ECF No. 1. With the Court's permission, Plaintiff filed the Amended Complaint on May 9, 2024. *See* Am. Compl.; Min. Entry, dated March 19, 2024. Thereafter, Defendant moved for judgment on the pleadings, filing the fully briefed Motion, including Plaintiff's opposition thereto, on September 26, 2024. *See* Mot., ECF No. 35. On May 7, 2025, the Honorable Nusrat J. Choudhury referred the Motion to this Court for report and recommendation. *See* Order Referring Mot., dated May 7, 2025.[3]

## **LEGAL STANDARD**

### I.     MOTION FOR JUDGMENT ON THE PLEADINGS UNDER FEDERAL RULE 12(c) OF CIVIL PROCEDURE

In deciding a motion for judgment on the pleadings, courts apply "the same standard as that applicable to a motion under Rule 12(b)(6), accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Pourkavoos v. Town of Avon*, 823 F. App'x 53, 59 (2d Cir. 2020) (summary order) (quoting *Kass v. City of New York*, 864 F.3d 200, 206 (2d Cir. 2017)); *Cleveland v. Caplaw Enters.*, 448 F.3d 518, 521 (2d Cir. 2006) ("The standard for addressing a Rule 12(c) motion for judgment on the pleadings is the same as that for a Rule 12(b)(6) motion to dismiss for failure to state a claim.").

To survive such a motion, "the complaint must contain sufficient factual matter to 'state a

---

[3] On July 29, 2025, Plaintiff filed a "supplemental response" to the Motion. *See* Suppl. Resp., ECF No. 36. This Court will not consider the supplemental response for several reasons, including that it: (1) is untimely; (2) attempts, improperly, to allege new facts; and (3) contributes nothing new or substantive to Plaintiff's previous arguments.

claim to relief that is plausible on its face.'" *Graziano v. Pataki*, 689 F.3d 110, 114 (2d Cir. 2012) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim is plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Matson v. Bd. of Educ. of City Sch. Dist. of N.Y.*, 631 F.3d 57, 63 (2d Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). However, the court need not credit "a legal conclusion couched as a factual allegation." *N.J. Carpenters Health Fund v. Royal Bank of Scot. Grp., PLC*, 709 F.3d 109, 120 (2d Cir. 2013) (citing *Iqbal*, 556 U.S. at 678).

## II. *PRO SE* STANDARD

Normally, courts must construe *pro se* pleadings "liberally with special solicitude," *Hogan v. Fischer*, 738 F.3d 509, 515 (2013) (quotations omitted), and hold a complaint filed *pro se*, "however inartfully pleaded," to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *see Hogan*, 738 F.3d at 515 (noting that the court must interpret a *pro se* complaint to "raise the strongest claims that it suggests"). However, a disbarred former attorney proceeding *pro se* is "not entitled to the special solicitude we normally extend to litigants proceeding without counsel." *Zappin v. Comfort*, 23-7363, 2024 WL 5001624, at *2 (2d Cir. Dec. 6, 2024) (summary order) (citing *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010)); *see U.S. v. Pierce*, 649 F. App'x 117, 117 n.1 (2d Cir. 2016) (summary order) (affording no special solicitude to a *pro se* litigant who is a disbarred attorney); *Mitchell v. Con Edison*, 531 F. App'x 140, 141 (2d Cir. 2013) (summary order) (same); *see also In re Truong*, 327 F. App'x 260, 262 (2d Cir. 2009) (summary order) ("Additionally, although Truong is proceeding *pro se,* he is an attorney, albeit a disbarred one.").

7

Here, although Plaintiff is *pro se*, the County contends that Plaintiff was formerly an attorney admitted to practice in New York.  *See* Def.'s Mem. Supp. at 1, n.1, ECF No. 35-1 (citing *Matter of Davenport*, 246 A.D.2d 268 (2d Dep't 1998)).  Indeed, in *Matter of Davenport*, the Second Department disbarred an attorney named Clint C. Davenport upon his conviction of a felony.[4]  *See* 246 A.D.2d at 269.

Plaintiff does not respond to Defendant's claim that he is a former attorney.  However, he seems to imply as much when explaining, in the Amended Complaint, that the court allowed him to represent himself in the traffic infraction prosecution.  *See* Am. Compl. ¶ 31 ("Quite surprisingly, the 'new' court questioned me extensively about my qualifications and understanding of my right to represent myself.  Although this question had been resolved years earlier, this court insisted upon reexamining the issue.  Only after an extensive interrogation, was the court satisfied, and I was again, granted permission to proceed pro-se.").

Ultimately, as it appears that Plaintiff is a disbarred attorney who was admitted to practice in New York for almost ten years, see *Davenport*, 246 A.D.2d at 268, this Court will not afford his submissions special solicitude.  *See Pierce*, 649 F. App'x at 117, n.1 (relying on opinion from the Second Department to confirm that the *pro se* litigant was a disbarred former attorney); *Mitchell*, 531 F. App'x at 140 (same).  However, even if this Court were to afford Plaintiff all the benefits normally extended to *pro se* litigants, Plaintiff's Amended Complaint would still be insufficient to withstand Defendant's Motion, as explained below.

---

[4] Additionally, a search of Plaintiff's name in the New York State Unified Court System reveals that an attorney named Clint C. Davenport was disbarred in 1998.  *See* N.Y. State Unified Ct. Sys., Att'y Online Servs. Search, https://iapps.courts.state.ny.us/attorneyservices/search?1 (lasted visited July 30, 2025).

8

## DISCUSSION

**I.   *MONELL* LIABILITY**

Plaintiff claims that the alleged traffic infraction prosecution amounted to a violation of his constitutional rights, as well as malicious prosecution and false arrest. In moving for judgment on the pleadings, Defendant argues that the Amended Complaint fails to establish a § 1983 claim, as it does not allege that an official policy or custom of the County caused any of the purported violations. Indeed, per the Supreme Court's decision in *Monell v. Department of Social Services*[5], a municipality may only be liable under § 1983 if it "had '(1) an official policy or custom that (2) caused [the plaintiff] to be subjected to (3) a denial of a constitutional right.'" *Torcivia v. Suffolk County*, 17 F.4th 342, 354–55 (2d Cir. 2021) (citing *Wray v. City of New York*, 490 F.3d 189, 195 (2d Cir. 2007)).

To satisfy the "official policy or custom" requirement, "a plaintiff may challenge an 'express rule or regulation,'" or "allege that the challenged practice 'was so persistent or widespread as to constitute a custom or usage with the force of law' or that the facts 'imply the constructive acquiescence of senior policy-making officials.'" *Green v. Dep't of Educ. of City of N.Y.*, 16 F.4th 1070, 1077 (2d Cir. 2021) (per curiam) (quoting *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015)); *see Connick v. Thompson*, 563 U.S. 51, 61 (2011) ("Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law"); *see also Sanchez v. Nassau County*, 662 F.Supp.3d 369, 418 (E.D.N.Y. 2023) (noting that a policy "may be pronounced or tacit" and "reflected in either action or inaction") (citing *Lucente v. County of Suffolk*, 980 F.3d 284, 297 (2d Cir. 2020)). "However, a 'general and conclusory allegation' of

---

[5] 436 U.S. 658, 692–94 (1978).

9

a municipal policy or custom fails to state a plausible claim." *Green*, 16 F.4th at 1077 (citing *Littlejohn*, 795 F.3d at 315); *see Chambers v. County of Nassau*, 19-cv-158, 2020 WL 1866586, at *5 (E.D.N.Y. Jan. 28, 2020) ("These allegations are nothing more than a formulaic recitation of the elements of a *Monell* claim, without any factual support to substantiate them."), *report and recommendation adopted*, 2020 WL 813109 (E.D.N.Y. Feb. 19, 2020).

Here, even when construed in Plaintiff's favor, the Amended Complaint fails to allege the existence of any such policy or custom. The Amended Complaint alleges neither an express regulation, nor a widespread or persistent practice that amounts to custom or usage with the force of law.

Plaintiff argues, however, that the County's alleged history of misconduct towards him "demonstrate[s]" such a custom or policy. *See* Pl.'s Mem. Opp'n ¶ 10, ECF No. 35-3. Indeed, the Amended Complaint describes Plaintiff's "history of antagonism" with the County and the police's supposed "vindictive abuse of power" against him. Am. Compl. ¶¶ 46, 49. However, even assuming—as this Court must at this stage—that Plaintiff's allegations concerning a purported history of harassment are true, such harassment does not amount to a custom or policy so as to establish *Monell* liability. *See Prince v. County of Nassau*, 837 F.Supp.2d 71, 104 (E.D.N.Y. 2011), *aff'd*, 563 F. App'x 13 (2d Cir. 2014) ("The Court declines to find that the alleged harassment—even if undertaken by municipal employees as part of a nefarious plot of revenge—is sufficient to establish *Monell* liability."); *see also Van Allen v. N.Y.C. Sch. Constr. Auth.*, 17-cv-2176 (NGG), 2018 WL 4783966, at *12 (E.D.N.Y. Sept. 30, 2018) (holding that the plaintiff did not sufficiently allege *Monell* liability even where the plaintiff had alleged that he had "been subject to numerous adverse actions.").

Absent allegations "that any other individual was subjected to the alleged unconstitutional

harms [Plaintiff] suffered," Plaintiff's assertions are insufficient to establish that the County has a policy of permitting the practices that Plaintiff alleges. *Accardi v. County of Suffolk*, 21-cv-5051 (HG), 2024 WL 1345233, at *9 (E.D.N.Y. Mar. 29, 2024); *see Nguedi v. Caulfield*, 813 F. App'x 1, 3 (2d Cir. 2020) (summary order) ("While Nguedi points to his own treatment as evidence of a custom, a single case is insufficient to establish the existence of such a practice"); *Barrere v. County of Nassau*, 18-cv-3562 (HG), 2024 WL 1258846, at *12 (E.D.N.Y. Mar. 24, 2024) (rejecting *Monell* claim where the plaintiff had "not put forth any evidence showing that any other inmate was subjected to the alleged unconstitutional harms he suffered"); *Pal v. Canepari*, 20-cv-13 (MPS), 2023 WL 2712371, at *21 (D. Conn. Mar. 30, 2023) ("The sole evidence she proffers as evidence of an official custom or policy is her own treatment. But a single case is insufficient to establish the existence of such a practice"); *see also Prince*, 837 F.Supp.2d at 104 ("As defendants point out, however, plaintiff has proffered evidence only as to purported harassment that occurred with respect to Bogart's and Chrebet's—not with any other bars or restaurants within the relevant area.").

Nevertheless, in opposing the Motion, Plaintiff relies on *Gentile v. County of Suffolk*, 129 F.R.D. 435, 446 (E.D.N.Y. 1990), to argue that the County's alleged history of wrongdoing towards him should have put Defendant "on notice" that the conduct was "substantially certain to result" in constitutional violations. *See* Pl.'s Mem. Opp'n ¶ 11. However, *Gentile* has no bearing on this case. In *Gentile*, the court considered whether portions of a government report—finding that the Suffolk County Police Department and District Attorney's Office were responsible for incidents of employee misconduct—were admissible at trial. *See* 129 F.R.D. at 437. In determining whether the report met the relevance standard under the Federal Rules of Evidence, the court held that the report tended to establish the existence of a municipal policy or practice, and supported the

11

plaintiff's claims that the police and District Attorney's Office consistently ignored evidence of the defendant officers' misconduct. *See id.* at 446.

Here, Plaintiff does not allege the existence of any such report or other document suggesting the existence of a municipal policy or custom. If anything, Plaintiff's claims rest largely on speculation and assumptions, rather than fact-based allegations. *See, e.g.*, Am. Compl. ¶ 46 ("Given this history of antagonism, it's no coincidence that the county would arrest me for a traffic infraction"); *id.* ¶ 48 ("The summons was issued in my name, so they must have 'run' the plate, in order to identify me. Either that, or they already knew it was my car. Interesting"); *id.* ¶ 49 ("I have never believed that the police had any real interest in my neighbor, when they came 'knocking' at my door. Interesting.").

Similarly, Plaintiff argues that his allegations demonstrate the County's "'laissez-faire' attitude" and a "DELIBERATE INDIFFERENCE . . . to POSSIBLE wrongdoing." *See* Pl.'s Mem. Opp'n ¶ 12. In making this argument, Plaintiff relies on *Fiacco v. City of Renssalaer*, which held that whether a city had a policy of nonsupervision—that consequently amounted to deliberate indifference towards its police officers' use of excessive force—was a question for the jury. 783 F.2d 319, 326–27 (2d Cir. 1986).

"'Deliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Connick*, 563 U.S. at 61 (citation omitted). "To prove 'deliberate indifference,' a plaintiff must show that there was an 'obvious need' for more or better supervision to protect against constitutional violations." *Dawson v. City of New York*, 22-cv-4784 (KAM), 2023 WL 4975974, at *5 (E.D.N.Y. Aug. 3, 2023) (citing *Vann v. City of New York*, 72 F.3d 1040, 1049 (2d Cir. 1995)). "[P]roof of repeated complaints of civil rights violations" and "lack of meaningful investigation into the complaints" can demonstrate this

12

"obvious need." *Id.* (citation and quotations omitted).

Here, there are no allegations suggesting such an "obvious need," let alone that this is even a case concerning negligent supervision. Plaintiff does not, for example, allege that the County failed to supervise its employees or investigate complaints against them. *See Ki v. City of New York*, 20-cv-4343 (ARR) (JRC), 2022 WL 5423642, at *7, n.4 (E.D.N.Y. Sept. 1, 2022), *report and recommendation adopted*, 2022 WL 4551378 (E.D.N.Y. Sept. 29, 2022). Plaintiff also does not, for example, allege the existence of a report or other materials suggesting an obvious need for more or better County supervision. *See Rodriguez v. City of New York*, 607 F.Supp.3d 285, 294–95 (E.D.N.Y. 2022) (holding that the plaintiff plausibly alleged deliberate indifference where the plaintiff, among other things, cited to a report to support allegations regarding the police's policies and practices). Plaintiff also fails, for example, to allege "any specific deficiency in the [County's] training program that could have caused the alleged constitutional deprivation." *Perrien v. City of New York*, 21-cv-4443 (MKB), 2022 WL 4134367, at *11 (E.D.N.Y. Sept. 12, 2022) (holding that the plaintiff failed to establish deliberate indifference where there were no allegations suggesting that policymakers failed to properly train or supervise their subordinates).

Ultimately, even accepting the Amended Complaint's factual allegations as true, and drawing all reasonable inferences in Plaintiff's favor, Plaintiff has failed to state a claim of municipal liability against the County.

## II.     PROSECUTORIAL IMMUNITY

Defendant also seeks judgment on the pleadings on the grounds of prosecutorial immunity. While true that prosecutors are individually immune from § 1983 liability for decisions undertaken in their prosecutorial capacity, "a plaintiff may maintain a *Monell* action against the relevant municipality if the prosecutors' constitutional violations were caused by an 'official municipal

13

policy or custom.'" *Rodriguez*, 607 F.Supp.3d at 297 (citations omitted).  Accordingly, Plaintiff could theoretically maintain a *Monell* claim against the County relating to the conduct of the District Attorney's Office even though he did not sue the individual prosecutors.  *See id.*  However, as already discussed, Plaintiff does not allege a policy or custom, and thus his *Monell* claim against the County fails.  As Plaintiff did not sue—let alone identify—the individual prosecutor(s) who worked on his case, this Court need not further consider Defendant's argument for prosecutorial immunity.

### III.    STATE LAW CLAIMS

"[I]f a plaintiff's federal claims are dismissed before trial, the state claims should be dismissed as well."  *Brzak v. United Nations*, 597 F.3d 107, 113–14 (2d Cir. 2010) (citation and quotations omitted).  As such, should the District Court find that any of Plaintiff's claims could survive the Motion on state law grounds—as New York law, unlike § 1983, allows municipal liability based on a respondeat superior theory[6]—this Court respectfully recommends declining to exercise supplemental jurisdiction over any such state law claims.  *See Reynolds v. City of New York*, 21-cv-6111 (AMD), 2024 WL 3718630, at *7 (E.D.N.Y. Aug. 8, 2024) ("Because the Court has dismissed the plaintiff's federal claims, the Court declines to exercise supplemental jurisdiction over her state law claims"); *Jallow v. City of New York*, 20-cv-6260 (LGS), 2021 WL 6052125, at *4 (S.D.N.Y. Dec. 21, 2021) (declining to exercise supplemental jurisdiction over causes of action construed to arise under state and local law).

### **CONCLUSION**

For the foregoing reasons, this Court respectfully recommends that the District Court GRANT the Motion.

---

[6] *Alwan v. City of New York*, 311 F.Supp.3d 570, 587 (E.D.N.Y. 2018) (noting that municipality liability under a respondeat superior theory "is cognizable as a matter of state constitutional-tort law, but not under § 1983.").

## OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Under 28 U.S.C. § 636(b)(1) and Rule 72(b)(2) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  Failure to file timely objections shall constitute a waiver of those objections both in the District Court and on later appeal to the United States Court of Appeals.  *See Frydman v. Experian Info. Sols., Inc.*, 743 F. App'x 486, 487 (2d Cir. 2018); *McConnell v. ABC-Amega, Inc.*, 338 F. App'x 24, 26 (2d Cir. 2009); *Tavarez v. Berryhill*, No. 15-cv-5141 (CS) (LMS), 2019 WL 1965832, at *30 (S.D.N.Y. May 1, 2019); *see also Thomas v. Arn*, 474 U.S. 140 (1985).

**SO ORDERED.**

                                                    /s/  
                                                    Steven L. Tiscione  
                                                    United States Magistrate Judge  
                                                    Eastern District of New York

Dated:  Central Islip, New York  
            August 13, 2025.